WESTMORELAND COUNTY.

OCTOBER AND NOVEMBER TERM, 1884, No. 172.   OCTOBER 10, 1884.

Brewer *v.* Scott *et al.*

1. It cannot be declared to be negligence in an employer to put a person within two months of the age of fourteen, of ordinary intelligence and of greater than ordinary size and strength, at work in a place where machinery is used in labor adapted to his age.

[Brewer v. Scott et al.]

2. The act of 24th May, 1878, (P. L., p. 119,) providing that "any person having the care, custody, or control of any minor child, under the age of fifteen, or who shall take, receive, or employ such minors for begging, or any obscene, indecent, or illegal exhibition or vocation, or any vocation injurious to the health, or dangerous to the life or limb of such child engaged therein, or for the purpose of prostitution, or any person who shall retain, harbor, or employ any minor child in or about any assignation house or brothel, shall be deemed guilty of a misdemeanor, and, upon conviction, thereof before any justice of the peace, magistrate, or court of record, shall be fined not less than fifty dollars, nor more than one hundred dollars, for each and every offense," is not applicable to this kind of employment.

Before MERCUR, C. J.; GORDON, PAXSON, TRUNKEY, STERRETT, and CLARK, JJ.; GREEN, J., absent.

Error to the Court of Common Pleas of Westmoreland County.

Trespass on the case by John Brewer by his mother and next friend, Susan Brewer, against John Scott, D. A. Stewart, Thomas Carnegie, and Andrew Carnegie, who survived William Coleman, David McCandless, and A. J. Crossland, deceased, parties trading as the "J. Edgar Thompson Steel Works Company," to recover damages for an injury sustained by alleged negligence of defendants. Plea, "not guilty."

On the trial, the following facts appeared :

The plaintiff, John Brewer, was employed in March, 1880, by the defendants, who are the owners of the Monastery Coke Works, near Latrobe, Westmoreland county, to work in their coke yards. A crushing machine was used at the works for the purpose of breaking or crushing coal. At the time of the accident, the plaintiff was thirteen years, eight months, and ten days old. His height was over six feet, his weight one hundred and forty-four pounds, and his wages eighty-five cents a day.

The plaintiff testified, inter alia :

"I lost this arm in the tipple. The tipple was at the mouth of the mines. It was either my third or fourth day, I cannot say which. I cannot say how wide the place I was working in was. I think, maybe, about eighteen, maybe twenty, inches, or a little more, I cannot tell exactly. I cannot say exactly how deep it was below the top of the ground, about two and a half feet, I would suppose. I do not know exactly how long. I was sitting on my knees. I was to keep the place from clogging whenever there would be a big lump get in the place where it went down through. I had to break it with an iron poker to keep the lumps small enough, so they would go down

[Brewer *v.* Scott *et al.*]

through.   I reached over to break a lump of coal, and my coat caught over the spider wheel.   You might call it the spider wheel.   When I tried to throw my coat off, in trying to throw it off, it caught my hand.   My arm is off just below the elbow.   It most certainly was a dangerous place.   I had to work with torch-light.   It was dark in there ; torch-light, a large lamp, you may say."

Upon cross-examination, he said :

"I did not think it was dangerous as soon as I went.   If I had I would not have gone in.   I discovered it was dangerous after I was hurt.   I could not help but see it when I was in there.   Still I did not think there was much danger ; not at that time.   When I went there at first I did not think there was any danger.   I did not think it was a very safe place, but I did not think there was much danger.   There was a log that the wheel worked on, the log that the wheel run in the inside of.   I was about six or eight inches from the wheel.   John Taylor and William Hartzell worked in there.   That is two parties that I know worked in there.   I never knew of anybody else hurt there.   I cannot tell you how old this Hartzell boy was.   I think he was older than me.   I was to kneel on my knees right beside that log.   At the time I was hurt I was not sitting on the log.   I did not tell young Hartzell that I was sitting upon that log.   The log was between me and the wheel.   The log was about six or eight inches thick.   I was on the opposite side of the log from the wheel.   I went to strike, and my coat flew out that way and it caught me.   My position there was to break any big lump that would clog in there.   I had in my hand to do it with a middling long iron rod, something like three feet long, or maybe a little more.   I would punch the coal with that."

John Taylor, an employé of defendants, testified for plaintiff, *inter alia :*

"It was not a fit place for a boy to work.   I think it would take a man to mind himself that he did not get hurt in a place of that kind.   *   *   *   It was a very narrow place, I suppose not over two feet, probably a little more than that.   It was a dangerous place."

George Lawson, for plaintiff and also an employé, testified :

"I do not think it was a dangerous place to work for any person who had any judgment about them.   I do not think it was any more dangerous than any other place about the works.   I had been in there before the boy Brewer got hurt ;   *   *   *   I did not feel anyways

alarmed about it.   *   *   *   I would not want a boy of mine to go in there, because a boy has not always the same judgment as a man has."

Casper Adams, another employé, called for the plaintiff, testified:

"I was acquainted with that piece of machinery before the accident occurred.   I put it there.   I would not think it was dangerous with proper care.

Q. How would it be for a boy?

A. With proper care, for a boy it would be the same as a man, to my notion.

Q. Do you think it was safe to put a boy in there to work?

A. I cannot tell you for that, if the boy was put there, if he took care.   I do not think there was any danger. If he was careful, I do not think there would be any danger."

William Kelley, who was also an employé, testified under plaintiff's call:

"I do not think it was any more dangerous than in any other places of the same kind about the works, if the boy was careful.

Q. But for a boy of that age?

A. Well, I think that, of course, a boy is always thoughtless and careless.   If he did not attend to his work, he might possibly be caught."

There was no attempt to show that defendants' machinery was defective or out of repair, or that any negligent act, contributing to the plaintiff's injury, had been committed by any of the defendants or their agents.

Roll Slater, E. W. Householder, George Sander, George Stader, all employés of defendants, and called by them, testified that there was no more danger at the work in which the plaintiff was engaged than in any other about such an industry.

Wm. Hartzell testified, inter alia, as follows:

"In March, 1880, I was working where Brewer was, where Brewer got hurt.   I was employed in that position. I was seventeen past, then.   The day that he got hurt I told him about getting hurt.   There was a place down, anyhow three feet, between this log and the outside for him to sit in.   He was sitting right on the log that way, and every time he would punch back his arm, would hit the elevator.   I saw him, and I told him about it.   I said, "You will get hurt."   He said he did not care a damn whether he would or wouldn't.   That was, maybe, four or five minutes before he got hurt, or maybe not that long.   That

was not a dangerous place to work in unless you made it
so.   I could have worked in there for years and never got
a scratch.   If he wanted to make it dangerous, certainly
it was dangerous, like any other machinery."

E. W. Householder testified :

"I asked the boy how he got hurt.   He told me he
had caught those elevators two or three times with his
hand, and had stopped them, and he caught them this
time and they did not stop, and he got his hand caught."

The plaintiff offered in evidence the act of 24th of May,
1878, section two (P. L., 119).

The Court charged the jury that "under all the evi-
dence, your verdict should be for the defendants."

Verdict accordingly for defendants and judgment there-
on ; whereupon, plaintiff took this writ, assigning for error
the action of the Court in directing the jury to find a ver-
dict for the defendants, and in not submitting to the jury
as a fact the question of defendants' negligence.

*Edgar Cowan* and *Lucien W. Doty* for plaintiff in
error.

The question of defendant's negligence ought to have
been submitted to the jury.   This is the general rule gov-
erning cases of this kind : Humphreys *v.* Reed, 6 Whart.,
435 ; Hydraulic Works Company *v.* Orr, 83 Pa. St. Rep.,
332 ; Fritsch *v.* Allegheny, 91 Pa. St. Rep., 226 ; McKee
*v.* Bidwell, 74 Pa. St., 218 ; McCully *v.* Clarke, 40 *Id.*,
399.

The learned judge held the infant plaintiff to the same
care and discretion as would have been required of an
adult.   It was said in effect that a child of thirteen years
of age is bound to take the risks of any employment in
which he may engage.   This is going further than any
case to be found in the books.   Blackstone, Vol. I, p. 435,
fixes fourteen as the age of discretion in males.   Under
seven years, an infant cannot be guilty of a felony.   Be-
tween seven and fourteen, the requisite discretion may be
present or wanting—the standard is not fixed.   His re-
sponsibility depends on circumstances, and whenever the
standard of the degree of care is not fixed, wherever the
duty is variable, the question is for the jury and not for
the Court : Smith *v.* O'Connor, 48 Pa. St., 218 ; Pennsyl-
vania R. R. Co. *v.* Kelly, 31 Pa. St., 372 ; Oakland Ry.
Co. *v.* Fielding, 48 Pa. St., 320 ; Philadelphia City Pas-
senger R. R. Co. *v.* Hassard, 75 Pa. St., 367.

Under the conflicting evidence in this case, it was a
question for the jury whether or not the employment was

[*Brewer v. Scott et al.*]

a dangerous one. If dangerous, the defendants in employing a minor under the age of fifteen were guilty of a misdemeanor—act of 24th May, 1878, (P. L., p. 119.) They were doing an illegal act, and if by their wrongful act they did injury to the plaintiff, they ought to be responsible in damages. The cupidity of corporations and large operators induces them, in violation of law, to employ mere children in the most hazardous and dangerous employments, and the only protection for society and the children of poor parents is to hold such employers to the strictest accountability for any injury done for such violation of law.

*J. A. Marchand* and *John F. Wentling* for defendants in error.

The rule laid down by the plaintiff in error as to when the question of negligence should be submitted to the jury, is entirely too general, and not within the scope of the evidence and circumstances in this case: Reading R. R. Co. *v.* Heil, 5 W. N. C., 93; Honer *v.* Albrighton, 8 W. N. C., 295.

Before the jury can be allowed to determine the case, the plaintiff must show culpable negligence on the part of the defendants, just as in the cases cited by the plaintiff in error, and so much relied on, namely : 48 and 75 Pennsylvania State Reports, pages 320–367; and in cases of injury to children unless this is first shown, the incapacity of the child cannot be considered by the jury : Kay *v.* Pennsylvania R. R. Co., 65 Pa. St., 276; Reading R. R. Co. *v.* Hummell, 44 Pa. St., 377; Nagle *v.* Allegheny Valley R. R. Co., 88 Pa. St., 39.

The act of 24th May, 1878, cited by plaintiff, only applies to masters of apprentices, guardians, fathers, and such "having the care, custody, and control of children," and not the employers thereof, such as the defendants, for a time to be agreed upon by the parties. And still further, this act cannot be intended to fix the age at which children can be employed in dangerous legitimate pursuits of life, unless it repeals the tenth section of the act of the 3d of March, 1870, which we think it does not do, found in Purd. Dig., page 1070, where the age of a boy is fixed at twelve years, when he can ."work or enter a coal mine." Therefore, under all the evidence and circumstances in the case, we think the Court was clearly right in directing a verdict for the defendants.

OCTOBER 20TH, 1884.—PER CURIAM: The act of 24th

[Craig *et al. v.* Harbison *et al.*]

May, 1878, P. L., 119, is not applicable to the kind of employment in which the plaintiff was engaged. It cannot be declared to be negligence in an employer to put a person of the age and size of the plaintiff, at work in a place where machinery is used. The labor which he was performing was adapted to one of his age. Other boys had done the same kind of work without being injured. The use of all kinds of machinery may result in possible injury to one at work near by. It is not, however, within such reasonable probability as to hold the employer guilty of negligence by reason of the age of the plaintiff. The machinery was not defective nor out of repair. There was no negligent act of the defendants or their superintendents which contributed to the injury. There was some evidence of negligence on the part of the plaintiff.

Judgment affirmed.